**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

GLENNBOROUGH HOMEOWNERS
ASSOCIATION,

            Plaintiff,

v.                                 Case No. 20-12526

UNITED STATES POSTAL SERVICE,

            Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND
DISMISSING THIS CASE**

Plaintiff Glennborough Homeowners Association brings this action for violation of

the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, breach of a consent judgment,

and for a declaratory judgment. (ECF No. 1, PageID.8-11.) Plaintiff, a residential

subdivision located in Ypsilanti, Michigan, petitioned Defendant United States Postal

Service to reclassify it as a neighborhood within Ann Arbor, Michigan. Defendant denied

that request.

Defendant moves to dismiss the complaint. (ECF No. 6.) The matter has been

thoroughly briefed. (ECF Nos. 8, 9.) The court has reviewed the record and does not

find a hearing to be necessary. E.D. Mich. LR 7.1(f)(2). For the reasons provided below,

the court will grant Defendant's motion.

## I.  BACKGROUND

The following are facts as alleged in Plaintiff's complaint. In a motion to dismiss, the court accepts Plaintiff's factual allegations as true but makes no overt finding as to truth or falsity. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff is located in Superior Township, Michigan, with an Ypsilanti zip code. (ECF No. 1, PageID.2.) The original developer of Plaintiff's subdivision brought suit against Defendant in 1999 to change Plaintiff's zip code. (*Id.*) In October 1999, the parties signed a consent judgment that recognized "Superior Township" as an authorized last line of address. (*Id.*)

Defendant has established a process to review requests to alter last lines of acceptable addresses and zip code boundaries. (*Id.*, PageID.3-4.) On November 23, 2015, Plaintiff requested a zip code change from Ypsilanti to neighboring Ann Arbor. (*Id.*, PageID.5.) Plaintiff is allegedly within the Ann Arbor school district and closer to the Ann Arbor post office than to the Ypsilanti post office. (*Id.*) On January 8, 2016, Defendant denied Plaintiff's request, but did not provide specific reasons for doing so. (*Id.*)

On February 16, 2016, Plaintiff initiated an internal appeal of Defendant's decision. (*Id.*, PageID.6.) Plaintiff argued that Defendant did not provide it an opportunity to discuss the zip code modification, that Plaintiff was not informed of the metrics Defendant used to deny Plaintiff's request, and that Defendant did not advise Plaintiff of the internal appeal process. (*Id.*) Defendant denied the appeal in August 2016. (*Id.*) Plaintiff alleges that when denying the appeal, Defendant committed several

procedural violations of agency policy, such as taking over sixty days to resolve Plaintiff's appeal. (*Id.*)

On November 16, 2016, Plaintiff reapplied for a zip code change. (*Id.*) Defendant responded on June 27, 2017, stating that "once a request to match a municipal boundary has been accommodated, additional requests to amend that boundary will not be considered more frequently than once every 10 years." (*Id.*) Plaintiff's second request was denied. (*Id.*)

On February 1, 2018, a resident of Plaintiff's subdivision, Kathryn P. Marx, submitted a FOIA request for documents related to Plaintiff's requested zip code change. (*Id.*, PageID.7; ECF No. 6-15, PageID.257; ECF No. 8, PageID.289.) Defendant denied Marx's FOIA request on March 23, 2018. (ECF No. 1, PageID.7, 17-18.) Marx filed an administrative appeal on April 27, 2018, and, on March 7, 2019, Defendant provided a response that Plaintiff contends is incomplete. (ECF No. 1, PageID.7; ECF No. 6-18, PageID.261-62.) Plaintiff also alleges that some of the information Defendant provided in its FOIA response was not previously disclosed. (ECF No. 1, PageID.7.) According to Plaintiff, the information that actually was disclosed did not fully explain the reasoning for Defendant's decision to deny a zip code change. (*Id.*)

Plaintiff filed this action on September 15, 2020, (*id.*), and Defendant moved to dismiss in lieu of filing an answer. (ECF No. 6.)

## II.  STANDARD

Defendant moved to dismiss Plaintiff's FOIA and declaratory judgment claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

(ECF No. 6, PageID.59, 66.) Defendant seeks dismissal of Plaintiff's breach of consent judgment claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (*Id.*, PageID.62.)

## A.  Subject Matter Jurisdiction

Rule 12(b)(1) permits parties to seek dismissal of claims for "lack of subject-matter jurisdiction." Such motions "fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (1994). For a facial attack, which concerns the legal sufficiency of the complaint, "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id.* (internal citation omitted).

For an attack against "the factual existence of subject matter jurisdiction[,] . . . no presumptive truthfulness applies to the factual allegations and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (internal citation omitted). "[A] trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat. Life Ins. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). The "[p]laintiff bears the burden of establishing that subject matter jurisdiction exists," and factual findings made by the court to "are reviewed for clear error." *Cartwright v. Garner*, 751 F.3d 752, 760 (6th Cir. 2014).

"Standing goes to a court's subject matter jurisdiction," *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013) (quotations removed), and can be reviewed through a Rule 12(b)(1) motion. *E.g.*, *Am. BioCare Inc. v. Howard & Howard Att'ys. PLLC*, 702 Fed.

App'x 416, 419 (6th Cir. 2017). "The Supreme Court has enumerated the following

elements necessary to establish standing:

> First, [the] [p]laintiff must have suffered an injury in fact–an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of– the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Parsons v. U.S. Dept. of Justice*, 801 F.3d 701, 710 (6th Cir. 2015) (quoting *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

### B.  Failure to State a Claim

Under Rule 12(b)(6), a party can move to dismiss a complaint for "failure to state

a claim upon which relief can be granted." When reviewing motions under Rule 12(b)(6),

the complaint is viewed in the light most favorable to the plaintiffs, the allegations in the

complaint are accepted as true, and all reasonable inferences are drawn in favor of the

plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Determining plausibility is "a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense." *Id.* at 679. The plaintiff must

present "more than labels and conclusions." *Twombly*, 550 U.S. at 545. "[A] formulaic

recitation of a cause of action's elements will not do." *Id.*

When reviewing a motion to dismiss, the court "may not consider matters beyond the complaint." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009). However, the court may consider "documents incorporated into the complaint by reference . . . and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may also consider "a document that is not formally incorporated by reference or attached to a complaint" when "[the] document is referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

### III. DISCUSSION

The court will first address whether it has subject matter jurisdiction over Plaintiff's FOIA and declaratory judgment claims. The court will then turn to a discussion of whether Plaintiff stated a valid breach of consent judgment claim.

### A. FOIA

The court reviews Defendant's motion to dismiss under Rule 12(b)(1) as a factual attack and will consider evidence attached to the parties' briefing. *See Ohio Nat. Life Ins.*, 922 F.2d at 325.

Defendant argues Plaintiff does not have standing to sue because Marx, not Plaintiff, filed the relevant FOIA request. (ECF No. 6, PageID.59-62.) Defendant attaches the FOIA requests, one of which was made on January 17, 2018, and another was made on February 1, 2018. (ECF Nos. 6-13, 6-15.) Both requests were made by Marx, both asked Defendant to respond to Marx directly, and the February 1 request explicitly stated the documents were "to me [Marx], a private citizen." (ECF Nos. 6-13,

6-15.) Plaintiff states "[t]he FOIA was signed by Kathryn Marx, a Glennborough resident and member of its zip code committee." (ECF No. 8, PageID.289.)

In order to have standing, Plaintiff must allege "an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Parsons*, 801 F.3d at 710 (emphasis added). Congress can create new legal interests that otherwise would not meet the court's standing requirements. *Lujan*, 504 U.S. at 578 ("Congress[] [may] elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law."). The Freedom Information Act is a statute that creates a legal right sufficient to underlie standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549-50 (2016) (listing examples of statutory violations that create standing); *Pub. Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 449 (1989) (comparing standing under the Federal Advisory Committee Act to the Freedom of Information Act). To establish standing under FOIA, a plaintiff need only show that it "requested[] information . . . and [it was] denied specific agency records." *Pub. Citizen*, 491 U.S. at 449; *accord Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Com'n*, 389 F.3d 536, 545 (6th Cir. 2004).

Even if a legal interest is created by statute, Plaintiff must have an injury that "affect[s] [it] in a personal and individual way." *Spokeo, Inc.*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1). Plaintiff must experience an injury that is unique and individualized; the alleged injury cannot be a "collective[] harm" that impacts society generally. *In re Carter*, 554 F.3d 979, 989 (6th Cir. 2009). An "abstract generalized grievance" against illegal behavior that is "suffered by all citizens" does not create standing. *Carney v. Adams*, 141 S. Ct. 493, 499 (2020).

7

Plaintiff did not make the FOIA requests at issue in this case. Marx did. (ECF Nos. 6-13, 6-15.) Nowhere do Marx's FOIA requests state that Plaintiff is making the request or that Marx is acting in an official capacity on behalf of Plaintiff. Furthermore, the complaint does not include an allegation that Plaintiff suffered an injury. The complaint simply states that a FOIA request was sent, Defendant did not timely respond to the request, and the responses Defendant did provide were incomplete. (ECF No. 1, PageID.8.)

While it is in society's abstract interest to have federal agencies comply with FOIA, Defendant's alleged violations do not alone establish standing for Plaintiff. *See In re Carter*, 554 F.3d at 989; *Carney*, 141 S. Ct. at 499. Plaintiff did not "request[] [the] information" at issue, *Pub. Citizen*, 491 U.S. at 449, and there is no "invasion of a legally-protected interest which is . . . concrete and particularized" to Plaintiff individually. *Parsons*, 801 F.3d at 710.

Although this issue is not frequently litigated, existing caselaw supports the court's conclusion. The court is aware of only one Sixth Circuit case that has reviewed standing in a FOIA action. *See Constagny, Brooks & Smith v. NLRB*, 851 F.2d 839, 841 n.2 (6th Cir. 1988). Notably, in that case, the plaintiff was a law firm that submitted a FOIA request on behalf of its client. *Id.* The Sixth Circuit found the firm had standing because it "request[ed] the production of documents" at issue. *Id.*

Furthermore, in *Fieger v. Federal Election Commission*, 690 F. Supp. 2d 644, 649 (E.D. Mich. 2010) (Lawson, J.), the court held that "[a] plaintiff who has neither made a request for information on his own nor explicitly through counsel cannot show an injury in fact, which is a necessary constitutional requirement of standing." In that

case, a subordinate attorney submitted a FOIA request under the name of his firm

"FIEGER, FIEGER, KENNEY, JOHNSON & GIROUX, P.C." *Id.* at 647. The plaintiff, a

managing attorney, alleged the government's FOIA response was inadequate. *Id.* Even

though the firm was explicitly identified in the FOIA request, and the plaintiff was

included in the firm's name, the court held that the plaintiff did not have standing to

challenge the FOIA response because he did not submit the request himself. *Id.* at 649-

50.

Similarly, the Third Circuit has held that a plaintiff lacked standing to bring a FOIA

action where his name was included in a "passing reference" and was not "identif[ied] . .

. [as] the person making the request." *McDonnell v. United States*, 4 F.3d 1227, 1238

(3d Cir. 1993). The court stated that "[a] 'case or controversy' conferring standing arises

only when a person makes a request for information under the FOIA and the petitioned

agency denies that request." *Id.* at 1238.

Plaintiff claims that it has standing to sue, and because it has standing, Marx can

be added as an additional plaintiff under Federal Rule of Civil Procedure 17(a)(3). (ECF

No. 8, PageID.292-93.) Rule 17(a)(3) states that "[t]he court may not dismiss an action

for failure to prosecute in the name of the real party in interest until, after an objection, a

reasonable time has been allowed for the real party in interest to ratify, join, or be

substituted into the action." Defendant argues that because Plaintiff lacks standing, Rule

17(a)(3) cannot be used. (ECF No. 9, PageID.355-57.)

Rule 17(a)(3) applies "when an understandable mistake has been made in

selecting the party in whose name the action should be brought" and "substitution of the

real party in interest is necessary to avoid injustice," such as when a plaintiff incorrectly

brings claims in an administrative capacity instead of a personal capacity.  6A Charles

Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1555 (3d ed. 2020).

The rule is not designed to allow a party who otherwise lacks standing to create

jurisdiction by adding a new plaintiff. The Sixth Circuit has repeatedly held that a party

without standing to bring a claim also has "no standing to make a motion to substitute

the real party in interest." *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir.

2002); *accord GMAC Mortgage, LLC v. McKeever*, 651 F. App'x 332, 337 (6th Cir.

2016). Plaintiff lacks standing to bring this FOIA claim, and the court will not substitute

Marx into the lawsuit using Rule 17(a)(3).

Defendant argues the FOIA claim must be dismissed with prejudice. (ECF No. 6,

PageID.62.) However, "a dismissal for lack of subject matter jurisdiction does not

operate as an adjudication on the merits for preclusive purposes." *Intera Corp. v.

Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (quotations removed). "Article III standing

is jurisdictional, and a federal court lacking subject-matter jurisdiction is powerless to

render a judgment on the merits." *Thompson v. Love's Travel Stops & Country Stores,

Inc.*, 748 F. App'x 6, 11 (6th Cir. 2018) (citing *Gaff v. Fed. Deposit Ins. Corp.*, 814 F.2d

311, 319 (6th Cir. 1987)). Thus, Plaintiff's FOIA claim will be dismissed without

prejudice.

### B.  Declaratory Judgment

The basis for Plaintiff's declaratory judgment claim is not clear. Plaintiff initially

applied to change its zip code on November 23, 2015. (ECF No. 1, PageID.5.) After an

appeal process, that request was denied in in August 2016. (*Id.*, PageID.6.) Plaintiff

reapplied for a zip code change on November 16, 2016. (*Id.*) On June 27, 2017,

Defendant denied Plaintiff's second application because "once a request to match a municipal boundary has been accommodated, additional requests to amend that boundary will not be considered more frequently than once every 10 years." (*Id.*) Plaintiff's claim is for "declaratory judgment." (*Id.*, PageID.10.) The count does not challenge Defendant's decision to deny a zip code change; it includes an allegation that Plaintiff's inability to request a zip code change more frequently than every 10 years violates the First Amendment's right to petition government. (*Id.*, PageID.10-11.) It also asserts generally that Defendant's 10-year policy is "unlawful." (*Id.*, PageID.10.)

Defendant asserts it a federal agency entitled to sovereign immunity. (ECF No. 6, PageID.67.) "Sovereign immunity is jurisdictional in nature. Indeed, the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." *Jude v. Comm'r of Soc. Sec.*, 908 F.3d 152, 157 (6th Cir. 2018) (quotations removed).

Plaintiff states that Defendant is subject to suit through a waiver of sovereign immunity contained in the Postal Reorganization Act ("PRA"), 39 U.S.C. § 401(1). (ECF No. 8, PageID.297-98.) Section 401(1) states that "the Postal Service shall have the . . . power[] . . . to sue and be sued in its official name."

The Supreme Court reviewed Defendant's sovereign immunity in the case *U.S. Postal Service v. Flamingo Industries (USA) Ltd.*, 540 U.S. 736 (2004). The Court first noted that, "as an 'independent establishment of the executive branch of the Government of the United States,' . . . [Defendant] is part of the Government and that status indicates immunity unless there is a waiver." *Id.* at 744. It then analyzed Defendant's immunity under a two-step process first articulated in *FDIC v. Meyer*, 510

U.S. 471 (1994). The Court in *Flamingo Industries* considered whether Defendant's immunity had been waived with regard to the plaintiff's claims. *Id.* at 743. Next, the Court examined whether the substantive legal claim "appl[ies] to an independent establishment of the Executive Branch of the United States." *Id.* The Court held that Defendant waived its immunity to suits brought under the Sherman Antitrust Act, but the plaintiff could not sue Defendant due to substantive limitations of the Act. *Id.* at 736-37.

Plaintiff provides the court no way to analyze whether Defendant waived its sovereign immunity with regard to Plaintiff's claim. The claim is for "declaratory judgment." (ECF No. 1, PageID.10-11.) Plaintiff cites no caselaw or statute in the complaint or briefing as the legal basis for this claim, and the court is aware of no general cause of action for "declaratory judgment."[1]

Normally, "[s]uits for declaratory judgment are a statutory creation enacted by Congress in the Declaratory Judgment Act," 28 U.S.C. § 2201. *Mut. of N.Y. v. Shaya*, 970 F. Supp. 1226, 1227 (E.D. Mich. 1997) (Duggan, J.) (quoting *Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520 (11th Cir. 1987)). However, it is well established that the Declaratory Judgment Act "does not create an independent cause of action." *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) (citing *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950)).

Plaintiff must have an articulable legal basis for its claim. General averments of "unlawful" action are not sufficient. (ECF No. 1, PageID.10.) The complaint mentions the

---

[1]     "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997) (quotation removed).

First Amendment's right to petition government. (*Id.*) However, the First Amendment, like other provisions of the Constitution, does not include a provision establishing a private cause of action against the federal government. *See* U.S. Const. amend I.

To the extent Plaintiff brings a claim under 28 U.S.C. § 2201 by relying on *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 397 (1971), Defendant is not subject to suit. *Bivens* created an implied right of action against federal officers for violations of the Constitution. *Id.* In *FDIC v. Meyer*, the Supreme Court analyzed whether a plaintiff could bring a *Bivens* claim against the Federal Deposit Insurance Corporation ("FDIC"), a federal agency like Defendant. 510 U.S. 473-74. In reviewing the FDIC's sovereign immunity, the Court held that federal agencies could not be held liable under *Bivens. Id.* at 483-85; *see also Koprowski v. Baker*, 822 F.3d 248, 255 (6th Cir. 2016) (After *Meyer*, "a plaintiff cannot bring a *Bivens* action against a federal agency.").

Plaintiff alleges that Defendant has included Plaintiff in the wrong zip code and that Defendant should allow postal service customers like Plaintiff to request changes to their zip codes more frequently. (ECF No. 1, PageID.5-6, 10-11.) To the extent Plaintiff challenges Defendant's service, internal rulemaking, or mail delivery under the Postal Reorganization Act, Defendant is not subject to suit. Title 39 U.S.C. § 3662 states that "[a]ny interested person . . . who believes the Postal Service is not operating in conformance with the requirements of the provisions of sections 101(d) [postal rates], 401(2) [Postal Service rules and regulations], 403(c) [mail discrimination], 404a [unfair competition and information disclosure], or 601 [mail delivery], or this chapter (or regulations promulgated under any of those provisions) may lodge a complaint with the

Postal Regulatory Commission ["PRC"]." Title 39 U.S.C. § 3663 states that "[a] person . . . adversely affected or aggrieved by a final order or decision of the [PRC] may, within 30 days after such order or decision becomes final, institute proceedings for review thereof by filing a petition in the United States Court of Appeals for the District of Columbia."

These provisions operate in conjunction to divest district courts of jurisdiction over complaints regarding Defendant's service and postal operations. *See Price v. U.S. Postal Serv.*, Case No. 13-1194, 2014 WL 3704286, at *2 (W.D. Mich. July 24, 2014) ("The Court lacks jurisdiction to adjudicate this claim because a postal customer's exclusive remedy for unsatisfactory service lies with the Postal Rate Commission."); *Pep-Wku, LLC v. U.S. Postal Serv.*, Case No. 20-00009, 2020 WL 2090514, at *2 (W.D. Ky. April 30, 2020) ("Plaintiffs have proffered no argument warranting departure from countless decisions of courts holding that the exclusive remedy for an individual or entity complaining about the USPS's mail delivery service lies in 39 U.S.C. §§ 3662 and 3663."); *LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 801 (8th Cir. 2006) ("[A plaintiff] cannot avoid the PRC's exclusive jurisdiction over commonplace service complaints through artful pleading."); *Bovard v. U.S. Postal Serv.*, 37 F.3d 1178 (Table), at *1 (10th Cir. Feb. 24, 1995) ("Congress did not intend to create a private right of action for service complaints."). If it wishes to do so, Plaintiff must bring such claims before the Postal Regulatory Commission, and Plaintiff may appeal any decision to the D.C. Circuit. 39 U.S.C. §§ 3662, 3663.

Defendant accurately states in its motion to dismiss that "Plaintiff has not identified any legal cause of action for its challenge to the USPS policy that parties may

only seek a zip code change once every 10 years." (ECF No. 6, PageID.67.) In the complaint and briefing, no legal citation or explanation is provided to support the "declaratory judgment" claim. Without this information, the court cannot conclude that Defendant waived its sovereign immunity with regard to the claim or that Defendant is subject to suit as a federal agency, even if immunity were waived. *See Flamingo Industries (USA) Ltd.*, 540 U.S. at 743. Dismissal of Plaintiff's "declaratory judgment" claim is warranted.

As with the FOIA claim, Defendant asks that this claim be dismissed with prejudice. (ECF No. 9, PageID.361.) However, "[s]overeign immunity is a jurisdictional doctrine." *Ford Motor Co. v. United States*, 768 F.3d 580, 586 (6th Cir. 2014); *Hohman v. Eadie*, 894 F.3d 776, 784 (6th Cir. 2018) (quoting *Beaman v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997)) ("The doctrine of sovereign immunity removes subject matter jurisdiction in lawsuits against the United States unless the government has consented to suit."). "A dismissal for lack of jurisdiction does not operate as an adjudication on the merits." *Holloway v. Brush*, 220 F.3d 767, 778 (6th Cir. 2000) (quoting Fed. R. Civ. P. 41(b)); *see also Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005) (holding that there is a "heavy presumption" that dismissal of claim against a state government on sovereign immunity grounds is "without prejudice"). Thus, Plaintiff's declaratory judgment claim will be dismissed without prejudice.

### C. Breach of Consent Judgment

Plaintiff alleges Defendant breached a consent judgment it signed in October 1999. (ECF No. 1, PageID.9-10.) The agreement was between Defendant and the

original developer of Plaintiff's subdivision. (*Id.*, PageID.2.) The consent order, which is attached to the complaint, states:

> The Postal Service will recognize "Superior Township, Michigan 48198" as an authorized last line of address for all phases of the Glennborough development, in place of its currently last line of address, "Ypsilanti, Michigan 48198."

(*Id.*, PageID.14.)

Plaintiff claims that Defendant breached this provision by "offer[ing] both 'Superior Township' and 'Ypsilanti' as an acceptable municipal name associated with the 48198 zip code. (*Id.*, PageID.9-10.) According to Plaintiff, the agreement allows for only Superior Township to be used as a last line of address. (*Id.*; ECF No. 8, PageID.293-95.) Defendant argues that, as a matter of law, the provision allows Superior Township or Ypsilanti to be used as a last line of address, and Defendant moves to dismiss the breach of consent judgment count for failure to state a claim. (ECF No. 6, PageID.62-66.)

"Consent decrees and judgments are binding contracts. The interpretation of a consent decree or judgment is a question of contractual interpretation." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 372 (6th Cir. 1998) (citations removed). If the consent judgment is formed in Michigan, "[the court] interpret[s] it under Michigan law." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 271 F.3d 235, 237-38 (6th Cir. 2001).

"[T]he court's obligation [is] to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning." *In re Smith Trust*, 480 Mich. 19, 24, 745 N.W.2d 754, 758 (2008) (citing *Frankenmuth Mut. Ins. Co. v. Masters*, 460 Mich. 105, 112, 595 N.W.2d 832, 837 (1999)). "[It] must . . . give effect

to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v. United Ins. Grp. Agency*, 468 Mich. 459, 468, 663 N.W.2d 447, 453 (2003).

When a contract's language in unambiguous, "[the] court[] must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *In re Smith Trust*, 745 N.W.2d at 758; *accord Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 794 (6th Cir. 2016) (citing *Port Huron Educ. Assn. v. Port Huron Area Sch. Dist.*, 452 Mich. 309, 323, 550 N.W.2d 228, 237 (1996)) ("When the language at issue is clear and unambiguous, its meaning is a question of law."). A contract is ambiguous "if it is equally susceptible to more than a single meaning," and "a finding of ambiguity is to be reached only after all other conventional means of interpretation have been applied and found wanting." *Kendzierski v. Macomb Cnty.*, 503 Mich. 296, 311, 931 N.W.2d 604, 611 (2019) (quotation removed). Determining the meaning of an ambiguous contract is a question of fact. *Klapp*, 663 N.W.2d at 454; *accord Solo*, 819 F.3d at 794 (quoting *Port Huron*, 550 N.W.2d at 237) ("[I]f the language is unclear or susceptible to multiple meanings, interpretation becomes a question of fact.").

Defendant argues that the word "an" in "an authorized last line of address" as it applies to the phrase "Superior Township, Michigan 48198" connotes that Superior Township is merely one possible last address line. (ECF No. 6, PageID.63.) Defendant notes that the word "an" has "a specific meaning, i.e. that it is one of a number of

17

potential options or groups." (*Id.*, PageID.64.) According to Defendant, Superior

Township is not exclusive to last address line that also includes Ypsilanti.[2]

Defendant's argument persuades. The court must interpret contracts "according

to [their] plain and ordinary meaning," *In re Smith Trust*, 745 N.W.2d at 758, and the

word "an" is used to "refer[] to something not specifically identified . . . but treated as

one of a class." *A*, *Oxford English Dictionary* (2020). For instance, the phrase

"aluminum is a metal" connotes that aluminum is one metal among others; "metal" is a

larger category within which the subcategory "aluminum" falls. Similarly, Superior

Township is one last line of address among others that could be used as an address.

The word "an" does not reasonably imply that Superior Township is the *only* last line

falling within the larger category of addresses. *In re Smith Trust*, 745 N.W.2d at 758;

*Ashcroft*, 556 U.S. at 678. By contrast, the word "the" "refer[s] to an individual item."

*The*, *Oxford English Dictionary* (2020). "*The* metal" would refer to a single, individual

metal, just as "*the* last line of address" would refer to a single identified last line of

address. That language, if used in the contract, could imply exclusivity. However, the

court must "give effect to every word, phrase, and clause in a contract" and avoid

rendering contract terms meaningless. *Klapp*, 663 N.W.2d at 453. The parties chose to

---

[2]      Defendant also attaches an affidavit from its postal supervisor for the Ypsilanti
Post Office stating that the agreement required Defendant to recognize Superior
Township as "a legitimate last-line-of-address." (ECF No. 6-11, PageID.251.) By
inference, Defendant argues the provision does not bar other last lines of address. (ECF
No. 6, PageID.64-65.) "Yet it is black-letter law that . . . a court evaluating . . . a motion
to dismiss must focus only on the allegations in the pleading[]." *Bates v. Green Farms
Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020). The court "may not consider matters
beyond the complaint," such an affidavit that adds context to a contract's meaning.
*Hensley Mfg.*, 579 F.3d at 613.

use the language "*an* authorized last line of address," and the court must enforce the contract as written. (ECF No. 6, PageID.63 (emphasis added).)

Plaintiff argues that the provision states Superior Township will be recognized as a last line address "in place of its currently last line of address, 'Ypsilanti, Michigan 48198.'" (ECF No. 1, PageID.14.) The court does not find this significant. The provision is not ambiguous: Defendant is not *barred* from delivering mail addressed to Ypsilanti. *In re Smith Trust*, 745 N.W.2d at 758. Plaintiff has an Ypsilanti zip code and is served by the Ypsilanti post office. (*Id.*, PageID.2, 5.) Ypsilanti is a natural last line of address. The agreement merely states that if a letter is addressed to Superior Township, in place of Ypsilanti, Defendant will allow the mail to be delivered to Plaintiff's subdivision. "In place of" is defined as "instead of, in lieu of, [or] as a substitute for." *Place*, *Oxford English Dictionary* (2020). The phrase does not imply exclusivity. Superior Township can be used as a substitute or in lieu of Ypsilanti, but Superior Township is not the only address that can be used to deliver mail to Plaintiff's residents.

Plaintiff adds that the consent order includes another provision that allows Ann Arbor to be used as "an" authorized last line of address, along with Superior Township:

> Nothing contained in this Order shall prevent the Postal Service from considering "Ann Arbor, Michigan" as an authorized last line of address for Glennborough should circumstances so warrant.

(ECF No. 1, PageID.15.)

This provision does not alter the court's conclusion. It says nothing of the use of Ypsilanti as an acceptable last line of address, and merely permits Defendant to consider Ann Arbor as an acceptable address, along with others, if Defendant so chooses. There is no reasonable inference that this provision serves to preclude all mail

deliveries addressed to Ypsilanti. *Ashcroft*, 556 U.S. at 678. The parties' contract is not ambiguous, and as a matter of law Plaintiff does not state a breach of consent order claim. *In re Smith Trust*, 745 N.W.2d at 758; *Ashcroft*, 556 U.S. at 678.

Dismissal is also warranted because Plaintiff does not allege an injury. Defendant accurately describes the nature of this claim:

> Plaintiff complains that the Postal Service is delivering mail regardless of whether it's addressed to Ypsilanti 48198 or Superior Township 48198. And Plaintiff wants the court to order the USPS to stop delivering the former and only deliver the latter. Plaintiff wants this court to tell the USPS to do a less-good job.

(ECF No. 6, PageID.66.) The focus of this case is on Defendant's refusal to move Plaintiff's subdivision into an Ann Arbor zip code. Nowhere in the complaint or briefing does Plaintiff state how it is injured by Defendant permitting mail to be addressed to Ypsilanti and still delivered to Plaintiff's residents. Presumably, the relief Plaintiff seeks would involve Defendant withholding mail addressed to Ypsilanti, the city of Plaintiff's zip code. That is deeply counterintuitive. Plaintiff has not shown how a reduction in service would mark an improvement for Plaintiff's residents or make Plaintiff whole in any way.

Injury in fact is a necessary element of standing. *See Parsons*, 801 F.3d at 710. A breach of contract claim also requires that the breach "result[] in damages to the [plaintiff]." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 495 Mich. 161, 178, 848 N.W.2d 95, 104 (2014) (citing *Stevenson v. Brotherhoods Mut. Benefit*, 312 Mich. 81, 90-91, 19 N.W.2d 494, 498 (1945)). The complaint does not allege, explicitly or by reasonable implication, an injury that resulted from Defendant properly delivering mail to Plaintiff's residents. *Ashcroft*, 556 U.S. at 678. Defendant's motion will be granted.

## IV. CONCLUSION

Plaintiff does not have standing to assert its FOIA claim, and Defendant is not subject to suit under Plaintiff's "declaratory judgment" claim. Finally, Plaintiff fails to state a valid breach of consent judgment claim. Accordingly,

IT IS ORDERED that Defendant's Motion to Dismiss (ECF No. 6.) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's complaint is dismissed in its entirety. Plaintiff's FOIA (Count I) and Declaratory Judgment (Count III) claims are DISMISSED WITHOUT PREJUDICE. Plaintiff's Breach of Consent Judgment (Count II) claim is DISMISSED WITH PREJUDICE.

s/Robert H. Cleland                                /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  March 8, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 8, 2021, by electronic and/or ordinary mail.

s/Lisa Wagner                                      /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\20-12526.GLENNBOROUGH.MotiontoDismiss.RMK.RHC2.docx